AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched*
*or identify the person by name and address)*
White single wide trailer address 1/4 mile east of
Sanostee Chapter House, Sanostee, New Mexico 87461
GPS 36.4294730, -108.8615751

)
)
)
)
)
)

Case No.    **23mr2255**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Attachment A

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:
Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Crimes committed in Indian Country |
| 18 U.S.C. § 113(a)(6) | Assault resuting inserious bodily injury |
| 18 U.S.C. § 2241(a)(1) | Aggravated sexual assault using force |

The application is based on these facts:
See attached affidavit, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Lorraine Hardy, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically Sworn and Electronically Signed *(specify reliable electronic means).*

Date:   12/6/2023
_____

_____
*Judge's signature*

City and state:  Farmington, New Mexico

B. Paul Briones, United States Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**IN THE MATTER OF THE SEARCH OF:**
White single wide trailer, address ¼
mile east of Sanostee Chapter House,
Sanostee New Mexico 87461, GPS
36.4294730, -108.8615751

Case No. _____

## AFFIDAVIT

I, Lorraine Hardy, being duly sworn, depose and state as follows:

## INTRODUCTION

1.      I am currently serving as an FBI Special Agent assigned to the FBI, Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes that occur in Indian Country to include homicide, aggravated assault, child sexual assault, kidnapping and rape.  I have been with the FBI for approximately 5 years. I received on the job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience include, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects and witnesses, writing affidavits for executing search warrants and arrest warrants, examining cellular telephones, managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting evidence and analyzing public records.

1

2.      The information set forth in this affidavit has been derived from an investigation conducted by the Farmington Resident Agency of the FBI, Navajo Nation Department of Criminal Investigation (NNDCI), and the Navajo Nation Police Department (NPD). During my investigation, I have developed information I believe to be reliable from the following sources:

      a.      Information provided by the FBI, NNDCI, NPD, and other law enforcement officials;

      b.      Information provided by witnesses; and

      c.      Records from the FBI National Crime Information Center (NCIC), Navajo Tribal Courts, and New Mexico Courts.

3.      Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause for the requested warrant.

## RELEVANT STATUTES

4.      This investigation concerns alleged violations of the following:

      a.      Title 18 U.S.C. § 1153 - Offenses committed in Indian Country;

      b.      Title 18 U.S.C.  § 113(a)(6) – Assault Resulting in Serious Bodily Injury; and,

      c.      Title 18 U.S.C. § 2241(a)(1)  - Aggravated Sexual Abuse.

## PROBABLE CAUSE

5.      On or about December 3, 2023, at approximately 4:00 PM, the Farmington Resident Agency of the FBI was notified by Navajo Nation Department of Criminal

2

Investigations (NNDCI) of a woman (hereinafter referred to as JANE DOE), year of birth 1985, was sexually assaulted in Sanostee, New Mexico and taken to Northern Navajo Medical Center (NNMC) in Shiprock with injuries.

6.      JANE DOE was interviewed by law enforcement at approximately 5:00 PM at NNMC.  It was learned JANE DOE was walking home on Hwy 491 in Shiprock, on December 2, 2023, at approximately 1:00 PM, when a late model blue Chevrolet pick-up truck (herein after referred to as the SUBJECT VEHICLE) bearing New Mexico license plate 442WYS, pulled over. A Native American male (later identified by law enforcement as MESCALE) jumped out of the SUBJECT VEHICLE and grabbed JANE DOE. JANE DOE attempted to run but MESCALE hit JANE DOE with a black handgun in the head. MESCALE threw JANE DOE into the truck and sped off heading South towards Sanostee. JANE DOE attempted to jump out of the SUBJECT VEHICLE, but MESCALE slammed JANE DOE's head into the dashboard rendering her unconscious.

7.      JANE DOE woke up to MESCALE dragging her out of the SUBJECT VEHICLE towards a white single-wide trailer with a shed attached. As soon as MESCALE got JANE DOE through the front door of the residence he ripped off all her clothes. JANE DOE was wearing black sweatpants, black hoodie, black shirt with "KORN" emblem and black bra and underwear. JANE DOE was completely naked. JANE DOE was bleeding heavily from her injuries. MESCALE dragged JANE DOE to the bathroom. JANE DOE kept fighting MESCALE, but he continued to throw her around and punch her in the face with his fists. MESCALE threw JANE DOE into the bathtub, breaking the bottom of the bathtub. MESCALE was drinking a bottle of alcohol with a silver label on it and smoking something. MESCALE started pouring the alcohol over JANE DOE's face choking her.

3

MESCALE told JANE DOE he was going to kill her, and nobody was going to find her. JANE DOE begged MESCALE to not hurt her.

8.      MESCALE dragged JANE DOE out of the tub to the hallway where he raped her vaginally MESCALE dragged JANE DOE to his bedroom and she tried to run. MESCALE caught JANE DOE in the living room and sat on her. MESCALE put his hands around her neck strangling her until she passed out. JANE DOE urinated and defecated on the living room carpet. MESCALE kicked JANE DOE in the back while she was on the floor. JANE DOE started throwing up. JANE DOE was scared she had a concussion because she felt like she was going to fall asleep.

9.      Throughout the evening some amount of time had gone by but JANE DOE was not sure how long due to her passing in and out of consciousness. MESCALE continued to rape and beat JANE DOE all through the night and into the next morning. JANE DOE believed MESCALE burned some of her clothes in the stove in the living room because they were covered in blood.

10.   The following morning MESCALE gave JANE DOE a pair of his black sweatpants and sweatshirt to wear. MESCALE walked a short distance away and JANE DOE jumped out of his bedroom window, breaking the window.  JANE DOE ran with no shoes towards a brown house screaming "help me, help me". MESCALE was chasing JANE DOE with the handgun. A woman (hereinafter referred to as K.R., year of birth 1974) opened the door of the neighboring house and hid JANE DOE inside her residence. K.R. called police. MESCALE ran to the back door and started kicking the back door yelling for JANE DOE. K.R.'s husband (hereinafter referred to as D.R.), year of birth 1973, went outside with a baseball bat and told MESCALE JANE DOE was not there. K.R. and D.R. both observed

4

MESCALE during the incident and identified him as their neighbor who lived in the single wide trailer next door. JANE DOE identified MESCALE, the man who chased her to the neighbor's house, as the same man who raped her.

11.    MESCALE sat on the ground halfway between his residence and the neighbors waiting for JANE DOE to come out.   Navajo Nation Police (NPD) officers arrived approximately thirty minutes later. MESCALE saw the officers and ran into a nearby arroyo.

12.    After an interview of the treating NNMC Emergency Room doctor, it was learned JANE DOE had sustained multiple contusions and abrasions. JANE DOE had several open cuts on her head and a Computed Tomography (CT) scan was ordered to identify any further injuries. CT scan result are pending.  JANE DOE was scheduled for a Sexual Assault Nurse Exam (SANE) the following day.

13.    Your affiant observed JANE DOE in the Emergency Room during the interview. JANE DOE was lying flat on her back with a C-collar around her neck. JANE DOE had multiple bruises and cuts on her face and several small bruises under her right jaw line on her neck. JANE DOE stated her pain level was a nine on a scale of one to ten.

14.    A federal search warrant (23-MR-2238) was executed at MESCALE'S residence on December 3, 2023. Law enforcement observed multiple areas of a red substance (believed to be blood) in the bathroom, living room carpet, the bedroom carpet and mattress. There is a broken window in MESCALE'S bedroom with glass fragments on the ground outside the window. The tub in the bathroom was broken with a hole in the floor. No subfloor was present and the dirt under the house was visible. The stove in the living room had several inches of grey ash in the ash pan with no visible remnants of any of JANE

DOE's clothing were identified in the ash. Several items of evidence were collected to include JANE DOE's black sweatpants, multiple swabs of the red substance, hair, and empty whiskey bottle.

15. MESCALE was interviewed on December 4, 2023, and stated he did not kidnap JANE DOE, she asked him for a ride and later asked to go to his residence to drink alcohol. MESCALE stated he did not rape JANE DOE, he had consensual sex with her four times because he only had four condoms. MESCALE only had sex with JANE DOE in his bedroom and the condom wrappers are in the bedroom trash can. MESCALE did not assault or abuse JANE DOE she received an injury to her head from falling through the floor of the bathtub while taking a shower. MESCALE helped JANE DOE out of the tub after she fell and believed that's where the bruises on her neck came from. JANE DOE was bleeding from the injury on her head, so MESCALE held a towel to her head to stop the bleeding. MESCALE believed the blood in the bathroom, living room and bedroom was from JANE DOE's head injury. MESCALE escorted her from the bathroom to his bedroom to sit on the bed while applying pressure to stop the bleeding. MESCALE did not burn JANE DOE's clothing. JANE DOE's black hoodie and black shirt were hanging over the stove in the living room to dry after getting wet in the bathroom.

16. MESCALE further stated he did not know why JANE DOE broke the window in his bedroom and ran over to the neighbor's house. MESCALE followed JANE DOE over to the neighbors to ask JANE DOE why she broke his window and if the neighbors were giving her a ride home (the battery in MESCALE's blue Chevrolet pickup truck allegedly died and the truck would not start). MESCALE was waiting to get a jump from someone so he could take JANE DOE home. MESCALE's Cellular One cell phone with assigned

6

call number 505-406-3305, was in his bedroom at the time of the interview. MESCALE stated he did not have a handgun and had never owned a handgun. MESCALE did not threaten or hit JANE DOE with a handgun and never threatened K.R. or D. R. with a handgun.

17.   MESCALE also revealed that during the execution of search warrant 23-MR-2238, he had made his way back to his truck to get his coat and then back to the arroyo to hide. MESCALE watched law enforcement conduct the search of the trailer until approximately 1:00 AM and then returned to his residence to get warm. The following morning MESCALE saw police coming so he ran outside and hid in an exterior shed. The exterior shed was not searched during that execution of the warrant, but may be a place where MESCALE left the firearm he brandished in this case.

18.   It has been my experience that the individuals who engage in criminal activity often conceal evidence of the crime, such as handguns and ammunition, in their residences, garages, sheds, outbuildings, yards, and vehicles. It has also been my experience that many people lie when speaking with law enforcement and will sometimes go to great lengths to hide evidence such as, handguns and ammunition.

19.   As described above and in Attachment B, this application seeks permission to search for evidence pertinent to the crime that might be found at the Subject Premises, based on the information MESCALE, JANE DOE, K.R., and D.R. provided, in whatever form they are found.

20.   The reported incident took place at ¼ mile East of Sanostee Chapter House, GPS coordinates 36.4294730, -108.8615751, which is within the exterior boundaries of the Navajo Nation, and Indian Country for purposes of federal law.

7

21.   MESCALE and JANE DOE are enrolled member of the Navajo Nation.

## CONCLUSION

22.   Based on the facts set forth in this affidavit, there is probable cause to MESCALE violated federal criminal statutes, 18 U.S.C. § 1153, crimes committed in Indian Country, 18 U.S.C. § 113(a)(6) assault resulting in serious bodily injury, and 18 U.S.C. § 2241(a)(1) aggravated sexual abuse using force. Therefore, I submit that this affidavit supports probable cause for a warrant to search the premises described in Attachment A and seize the items described in Attachment B. Evidence sought in Attachment B may serve to inculpate or exculpate MESCALE and are critical to the unfolding investigation.

23.   Assistant United States Attorney Mia Ulibarri-Rubin has approved this application.

24.   I swear that this information is true and correct to the best of my knowledge and belief.


Lorraine Hardy, Special Agent
Federal Bureau of Investigation


Electronically SUBSCRIBED and telephonically SWORN to me this ____6th____ day of December, 2023.

HONORABLE B. PAUL BRIONES
United States Magistrate Judge

8

## ATTACHMENT A

### PREMESIS TO BE SEARCHED

The property to be searched is described as follows:

The SUBJECT PREMISES is located at ¼ mile east of Sanostee Chapter House, Sanostee, New Mexico 87461. GPD coordinates 36.4294730, -108.8615751. The SUBJECT PREMISES can be described as a white single wide trailer with an attached storage shed. Several outbuildings, sheds and inoperable vehicles are on the property and are included in the search parameters.





9

**ATTACHMENT B**

The following materials, which constitute evidence of a crime or property designed or intended to use in the commission of a criminal offense, namely violations of 18 U.S.C. § 1153, crimes committed in Indian Country, 18 U.S.C. § 113(a)(6) assault resulting in serious bodily injury, and 18 U.S.C. § 2241(a)(1) aggravated sexual abuse using force :

1.  A black handgun and any ammunition.

2.  JANE DOE's clothing to include a black hoodie and a black shirt wither with the "KORN" band logo.

3.  Any clothing or towels that appear to be bloody.

4.  MESCALE's cell phone, assigned call number 505-406-3305.

5.  Photographs of the inside and outside of the house, attached storage shed, out buildings, and inoperable vehicles.

6.  Condoms, condom wrappers, or packaging.

7.  Testing the bathroom faucets to corroborate that the trailer has running water.

8.  Testing the truck ignition to see if the truck battery is dead.

9.  Any applicable biological evidence such as blood, semen, urine, feces, and vomitus.

10